T.C. Memo. 2014-36

UNITED STATES TAX COURT

NOEL I. HULL, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29134-11.                          Filed March 6, 2014.

<u>Brian C. Purcell</u>, for petitioner.

<u>Matthew S. Reddington</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:[1]  The parties submitted this case fully stipulated pursuant to Rule 122.  The issue for decision is whether respondent's denial of petitioner's request for abatement of interest on assessed section 6663 fraud penalties for the

_____

[1]This case was assigned to Judge Julian I. Jacobs by order of the Chief Judge on November 6, 2013.

[*2] period December 17, 2004, through February 21, 2008, with respect to year

2000, and for the period December 5, 2005, through February 21, 2008, with

respect to years 1996, 1997, 1998, 1999, constitutes an abuse of discretion.  In the

notice of determination upon which this case is based respondent determined that

for each of the years involved (i.e., 1996-2000) petitioner was entitled to an

abatement of interest for the eight-month period June 1, 2007, to January 31, 2008,

but not for the periods petitioner requested.  See infra pp. 8-9.[2]  We hold that

respondent's denial of petitioner's interest abatement request, other than as

allowed in the notice of determination, does not constitute an abuse of discretion.

All Rule references are to the Tax Court Rules of Practice and Procedure, and all

---

[2]At the hearing petitioner's counsel requested permission to file an amended petition in which petitioner would seek interest abatement for the period February 22, 2008, through March 16, 2009, with respect to each of the years involved.  The Court granted petitioner leave to file an amended petition, but no amended petition was ever filed.  Thus, we deem petitioner to have abandoned his interest abatement request for the period February 22, 2008, through March 16, 2009.  In any event, in determining whether respondent's settlement officer's determination constitutes an abuse of discretion, we generally consider only the arguments, issues, and other matters that were raised at the sec. 6330 hearing or otherwise brought to the attention of the settlement officer.  See A-Valley Eng'rs, Inc. v. Commissioner, T.C. Memo. 2012-199 (citing Giamelli v. Commissioner, 129 T.C. 107, 115 (2007)).  And in this regard, petitioner did not seek or raise interest abatement for the period February 22, 2008, through March 16, 2009, at his sec. 6330 hearing with respondent's settlement officer or otherwise bring this matter to the attention of that officer.

**[*3]** section references are to the Internal Revenue Code in effect for the years involved.

## Background

We adopt as findings of fact all statements contained in the stipulation of facts. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Virginia when he filed his petition.

On November 17, 2004, petitioner signed a plea agreement with the U.S. Department of Justice in which he pleaded guilty to a violation of section 7206(1), to wit, the filing of a false individual income tax return for year 2000. Petitioner, in his plea agreement, stated:

> I agree to file true and correct Individual Income Tax Returns (Form 1040) for the years 1996-2000 within 120 days of sentencing. I further agree to pay all taxes due and owing; and
>
> I further understand that my failure to make good faith efforts toward payment of my tax liability, interest and fraud penalty, with whatever means I have at my disposal, and requesting that any tax assessment be reviewed by the Appeals Section of the Internal Revenue Service may be a violation of this agreement, as well as a condition of my Supervised Release and that the United States Attorney will be free to refile and/or bring new criminal charges I am avoiding by accepting this agreement.

In accordance with the plea agreement, on August 11, 2005, petitioner filed amended tax returns for the years involved. He did not remit payments with these

[*4] returns. On December 5, 2005, respondent sent petitioner a Form 3552, Notice of Tax Due on Federal Tax Return, assessing the tax reported due.

On January 30, 2006, Sherry S. Stadler, respondent's technical services group manager for the South Atlantic Area, sent a memorandum to Christine Bass, a return classification specialist in respondent's South Atlantic Area, informing her that the criminal investigation and prosecution of petitioner had been completed and that petitioner's case was being assigned to Ms. Bass' group for civil settlement. Ms. Stadler's memorandum included a paragraph stating:

> Section 25.1.6.2(5) of the IRM [Internal Revenue Manual] provides, "If criminal prosecution of a taxpayer has been recommended by CI [respondent's criminal investigative unit] to the Department of Justice, the civil fraud penalty or fraudulent failure to file may be removed only upon written recommendation or concurrence by Area Counsel. * * *" The revenue agent should consider this point during the civil settlement phase of the examination.

Attached to the memorandum was a copy of the plea agreement that petitioner signed.

Because petitioner failed to remit payment with his amended returns, on February 25, 2006, respondent sent petitioner Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to his unpaid income tax liabilities. In response to that letter, on March 6, 2006, petitioner filed Form 12153, Request for a Collection Due Process or Equivalent Hearing (section 6330

[*5] hearing). Petitioner's request was assigned to Settlement Officer Darlene Caputo who, after consulting with the U.S. Attorney's Office, determined that petitioner had waived his right to have a section 6330 hearing by signing the plea agreement. On June 20, 2006, Settlement Officer Caputo sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) to that effect.

On August 8, 2006, Revenue Agent Jackie Roberts was assigned to examine petitioner's amended returns and to determine whether the fraud penalty pursuant to section 6663 (civil fraud penalty) should be applied for each of the years involved. On October 16, 2006, Revenue Agent Roberts was placed on a temporary detail which delayed her working on petitioner's case. She worked on petitioner's case only "as time permitted" from October 26 to December 1, 2006.

On April 20, 2007, Revenue Agent Roberts mailed Letter 2205-A(DO) to petitioner informing him that his returns for the years involved had been selected for examination. She requested that he call her by May 4, 2007.[3] Revenue Agent Roberts worked on petitioner's case until September 7, 2007, on which date she was transferred to another position. On September 11, 2007, petitioner's case was

---

[3]On May 4, 2007, petitioner's representative contacted respondent to discuss the case.

[*6] reassigned to Revenue Agent Sheila Denton. Revenue Agent Denton commenced work on petitioner's case on September 19, 2007. After reviewing the case file, Revenue Agent Denton determined that the civil fraud penalty should be applied for each of the years involved; thereafter, she sought her manager's approval to do so. On January 30, 2008, Revenue Agent Denton realized that she had not received a signed penalty approval form; rather, she had received only her manager's verbal approval. The group manager signed the penalty approval form on January 30, 2008, and on the next day (January 31, 2008), Revenue Agent Denton contacted petitioner's representative to discuss the case with him. Settlement Officer Denton prepared, and obtained supervisory review of, Letter 950 (DO) to be sent to petitioner. Before sending Letter 950, Settlement Officer Denton became ill which, together with her absence due to a Federal holiday, prevented her from working on petitioner's case for several days.

On February 21, 2008, respondent mailed Letter 950 (DO) to petitioner. That letter set forth the results of the tax examination of petitioner's returns and concluded that petitioner was liable for the civil fraud penalty for each of the years involved. Two months later, on April 21, 2008, petitioner protested respondent's findings. Petitioner's appeal was then assigned to Appeals Officer Kathryn Lester.

[*7] Appeals Officer Lester and petitioner ultimately agreed to a settlement whereby the amounts of the civil fraud penalties for years 1996-1999, but not the amount for year 2000, were reduced. On December 11, 2008, Appeals Officer Lester mailed petitioner a letter memorializing the settlement together with Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment. Petitioner signed the Form 870-AD on December 29, 2008, and returned it to Appeals Officer Lester on December 31, 2008. On February 3, 2009, Alan Redstone, the Appeals Team Manager, mailed petitioner Letter 913 stating that the settlement agreement had been approved.

On March 16, 2009, respondent mailed petitioner Notice CP22E indicating an assessment of the civil fraud penalty for each of the years involved was made per the agreed settlement. Petitioner paid a portion of the civil fraud penalties assessed. On January 12, 2010, respondent issued a Final Notice Notice Of Intent To Levy And Notice Of Your Right To A Hearing, with respect to all years involved. On January 25, 2010, petitioner filed Form 12153 in which he requested a section 6330 hearing. He did not seek an abatement of interest on the amounts of the civil fraud penalties in his hearing request.

On April 19, 2010, petitioner requested an abatement of interest on the civil fraud penalties. The reasons given for the interest abatement request were (1) with

[*8] respect to year 2000, the plea agreement constituted a waiver of restrictions on assessment within the meaning of section 6213(d) and (2) there were unreasonable delays in respondent's agents' performing ministerial or managerial acts in the assessment of the civil fraud penalty for each of the years involved.

> As a result, interest on the Civil Fraud Penalty Amount for the Tax Year Ending 12/31/00 should be abated from the date 30 days after the date of the Plea Agreement (i.e., 30 days after November 17, 2004) until notice and demand for payment of such interest was made as indicated on the Letter 950 (i.e., February 21, 2008).
>
> In addition, the Taxpayer respectfully submits that interest should be abated on the Civil Fraud Penalties for all the Tax Years at Issue, other than the Tax Year Ending 12/31/00, from the date of the filing of the amended returns (i.e., August 11, 2005) through (February 21, 2008) under IRC §6404(e)(1) for unreasonable delay in making the assessment.  The Internal Revenue Service knew that the Taxpayer had agreed that he filed a false tax return with respect to Tax Year Ending 12/31/00 as of November 17, 2004 and the facts surrounding the other Tax Years at Issue were also known to the IRS at that point.  The delay in "selecting" the taxpayer's returns for examination was purely based on the IRS internal administrative issues.  Once the returns were selected for examination, there was further delay caused by reassignment of the Revenue Officer assigned to the case (Ms. Roberts) and waiting for another Revenue Officer to be assigned.
>
> Petitioner's case file was reviewed by Settlement Officer Mary Hallman.

On June 20, 2011, respondent mailed a notice of determination in which respondent's Appeals Office determined that there had been a ministerial delay

**[\*9]** during the examination of petitioner's amended returns from June 1, 2007, to January 31, 2008, for all years involved, and thus accrued interest with respect to the civil fraud penalties for that eight-month period should be abated. The notice of determination stated the following with respect to the abatement of interest:[4]

> Period from return due dates to April 20, 2007--Interest not subject to abatement, since no written notification from IRS to Taxpayer.

> Period from April 20, 2007 to June 1, 2007--A review of Examiner's Activity Record shows exercise of judgment and discretion and actions taken to reach a decision–no delays of ministerial or managerial acts.

> Period from June 1, 2007 to January 31, 2008--On January 31, 2008, IRS began to prepare the letter to propose the penalties. By June 1, 2007, prerequisites to this act had taken place. Interest abatement on this period is appropriate.

> Period from January 31, 2008 to February 21, 2008--No delays or errors in preparing proposal letters to Taxpayer.

---

[4]The notice of determination further stated that although petitioner had proposed an installment agreement, he failed to specify a monthly amount and did not submit financial information to support an installment agreement. The notice stated that Settlement Officer Hallman had verified that respondent met all legal and procedural requirements and that the proposed collection actions balanced the need for efficient collection with petitioner's concern that the collection action be no more intrusive than necessary. Petitioner does not challenge these determinations; hence, we do not consider them. See Rule 331(b)(4).

**[*10]**                                          <u>Discussion</u>

I.       <u>Introduction</u>

As noted <u>supra</u> pp. 7-8, petitioner asserts two distinct grounds as the basis

for the abatement of interest.  First, with respect to year 2000, petitioner maintains

that his plea agreement constituted a waiver of restriction on the assessment and

collection of his taxes, as defined in section 6213(d).  And second, with respect to

year 2000 and each of the other years involved, petitioner maintains that

respondent abused his discretion in not abating interest on the civil fraud penalty

that accrued during the period in which respondent's agents caused unreasonable

delays in the course of performing ministerial and/or managerial acts.  <u>See</u> sec.

6404(e).

II.      <u>2000 Tax Year--Waiver of Restrictions on Assessment</u>

Section 6213(d) permits a taxpayer to waive the restrictions provided in

section 6213(a) on the assessment and collection of the whole or any part of an

income tax deficiency.  Such a waiver must be made in writing, signed by the

taxpayer, and filed with the district director or other authorized official under

whose jurisdiction the audit or other consideration of the return in question is

being conducted.  Sec. 301.6213-1(d), Proced. & Admin. Regs.  If a section

6213(d) waiver of restrictions on assessment applies, interest is suspended if a

[*11] notice and demand for payment is not made within 30 days after the filing of the waiver.  Sec. 6601(c).[5]

Generally, the waiver is executed by filing a designated form, but the restrictions on assessment may be waived in other ways.  See, e.g., Ulrich v. Commissioner, 585 F.3d 1235 (9th Cir. 2009) (Form 4549, Income Tax Examination Changes, constituted a waiver when it included a statement specifically consenting to immediate assessment and collection); Corson v. Commissioner, T.C. Memo. 2009-95 (joint stipulated decision document constituted a waiver when it explicitly stated that the taxpayer waived restrictions on assessment).

Petitioner posits he met all of the requirements of section 6213(d) and section 301.6213-1(d), Proced. & Admin. Regs., in that (1) the plea agreement (A) was in writing and signed by him; (B) was filed with respondent, in that copies of the plea agreement were forwarded to several of respondent's employees who were working on petitioner's case; and (C) waived the restriction on assessment and collection, in that the plea agreement stated that petitioner would pay all taxes, interest, and fraud penalties and contained a provision that any request by

_____

[5]Sec. 6665 provides that a fraud penalty is treated as a deficiency for purposes of secs. 6601(c) and 6404(e).

[*12] petitioner to have his case reviewed by respondent's Office of Appeals would violate the terms of the plea agreement and (2) respondent treated the plea agreement as a waiver on restriction on assessment and collection, in that (A) respondent issued Letter 1058, dated February 25, 2006, stating his intent to levy on petitioner's property to satisfy petitioner's 1996-2000 income tax liabilities and (B) respondent rejected petitioner's challenge to the assessment of the income tax liabilities in the June 20, 2006, notice of determination on the grounds that petitioner had waived his right to seek Appeals Office review of his plea agreement.

Petitioner's contention is meritless. Initially, we note that the plea agreement does not specifically state that petitioner intended the plea agreement to be a waiver of restriction on assessment. This contrasts with the respective documents in Ulrich and Corson, each of which explicitly states that the taxpayers consented to waive the restriction on assessment.

Moreover, the plea agreement does not establish the amounts to be assessed. Rather, in his plea agreement, petitioner (1) agreed to file corrected Federal income tax returns which would ultimately establish the amounts of tax he owed and (2) waived his right to seek review by respondent's Office of Appeals of any assessment of tax.

**[*13]** Further, we disagree with petitioner's position that respondent treated the plea agreement as a waiver of restriction on assessment. When petitioner filed the required amended returns on August 11, 2005, he remitted no payment. In instances where a taxpayer self-assesses his/her income tax but does not remit payment, the Secretary is authorized, pursuant to section 6201(a)(1), to assess all tax reported by the taxpayer on his/her return. Thus, respondent relied on his statutory authority in assessing petitioner's tax liabilities rather than on a waiver of the restrictions on assessment. Hence, because petitioner did not waive restrictions under section 6213(d) for the years involved, the 30-day rule provided by section 6601(c) does not apply.

III. <u>All Tax Years Involved--Abatement for Ministerial and/or Managerial Delay</u>

Interest normally begins to accrue on a tax liability on the date on which the return of the tax with respect to which the penalty or addition to tax is imposed is required to be filed (including any extensions) and ends on the date of payment of the penalty or addition to tax. <u>See</u> secs. 6601(e)(2)(B), 6622. Because interest continues to accrue until the tax is paid, interest may be assessed at any time during the period within which the tax (to which the interest relates) may be collected. Sec. 6601(g).

[*14] Congress authorized the Secretary to abate the assessment of interest in certain prescribed circumstances. Specifically, section 6404(e)(1) provides that the Secretary may abate the assessment of all or any part of interest for any period, in the case of any assessment on (1) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service, acting in his official capacity, in performing a ministerial or managerial act or (2) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to the officer or employee being erroneous or dilatory in performing a ministerial or managerial act.[6] For purposes of section 6404(e)(1), an error or delay may be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved and only after the Commissioner has contacted.

---

[6]Sec. 6404(e)(1) applies to interest accruing with respect to deficiencies or payments for taxable years beginning after December 31, 1978. Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 1563(b), 100 Stat. at 2762. In 1996 Congress amended sec. 6404(e)(1)(A) and (B) to refer to "unreasonable" errors or delays in performing ministerial or managerial acts. Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. No. 104-168, sec. 301(a), 110 Stat. at 1457. The amendments apply to interest accruing on deficiencies or payments for taxable years beginning after July 30, 1996. See id. sec. 301(c). For taxable years beginning on or before July 30, 1996, the Secretary may abate an assessment of interest under sec. 6404(e)(1) only when it is attributable to an error or delay by an officer or employee in performing a ministerial act. See id.

**[*15]** the taxpayer in writing with respect to the deficiency or payment at issue.

Sec. 6404(e)(1) (flush language).

If the Commissioner issues a notice of determination denying a taxpayer's request for abatement of interest under section 6404, and if the taxpayer timely files a petition for review, section 6404(i)[7] grants jurisdiction to this Court to determine whether the Commissioner's failure to abate interest was an abuse of discretion if the taxpayer meets the requirements referred to in section 7430(c)(4)(A)(ii), see section 6404(i)(1) (relating to certain net worth requirements), and, if an abuse is so determined, to order an abatement thereof.[8]

To prevail under section 6404(e), a taxpayer must:  (1) identify an error or delay by the Commissioner in performing a ministerial or managerial act;[9] (2)

---

[7]Tax Court review was initially enacted as section 6404(g) by TBOR 2, sec. 302(a), 110 Stat. at 1457.  The statute is currently codified at sec. 6404(h) pursuant to the Victims of Terrorism Tax Relief Act of 2001, Pub. L. No. 107-134, sec. 112(d)(1)(B), 115 Stat. at 2434.

[8]We note that interest abatement is permitted only "'where failure to abate interest would be widely perceived as grossly unfair'".  See, e.g., Krugman v. Commissioner, 112 T.C. 230, 238-239 (1999) (quoting H.R. Rept. No. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844, and S. Rept. No. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208).

[9]As stated supra note 6, the older version of sec. 6404(e), by which the Secretary may abate an assessment of interest only when it is attributable to an error or delay by an officer or employee in performing a ministerial act, applies to

(continued...)

[*16] establish a correlation between the error or delay and a specific period for which interest should be abated; and (3) show that he/she would have paid the tax liability earlier but for the error or delay. See Paneque v. Commissioner, T.C. Memo. 2013-48; Hancock v. Commissioner, T.C. Memo. 2012-31; Braun v. Commissioner, T.C. Memo. 2005-221. If all these factors are present, the taxpayer must show that, in denying the taxpayer's interest abatement request, the Commissioner abused his discretion by acting arbitrarily, capriciously, or without sound basis in fact or law. Sec. 6404(i)(1); see Allcorn v. Commissioner, 139 T.C. 53 (2012); Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

A managerial act "means an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel." Sec. 301.6404-2(b)(1), Proced. & Admin. Regs. A ministerial act "means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case

---

[9](...continued)
petitioner's 1996 tax year. However, this difference does not affect the result here.

[*17] after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.[10]

Petitioner asserts that because of ministerial and/or managerial acts respondent delayed the processing of his case, and therefore he requests abatement of interest with respect to the civil fraud penalties from December 5, 2005, through February 21, 2008. As noted supra pp. 8-9, in the notice of determination respondent in part agreed with petitioner's contention that unreasonable delays occurred in the processing of petitioner's case. Thus, respondent abated interest on the civil fraud penalties that accrued from June 1, 2007, to January 31, 2008.

Respondent did not abate interest that accrued before April 20, 2007, because petitioner was first contacted with regard to the civil fraud penalties on that date, i.e., when Revenue Agent Roberts sent Letter 2205-A to petitioner informing him that his income tax returns for the years involved had been selected for examination.[11] The flush language of section 6404(e)(1) does not authorize

---

[10]Sec. 301.6404-2, Proced. & Admin. Regs., generally is applicable to interest accruing with respect to deficiencies or payments of any tax described in sec. 6212(a) for taxable years beginning after July 31, 1996. The definition of "ministerial" act for taxable years beginning before July 31, 1996, is the same as that set forth supra. See sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

[11]We are mindful that respondent contacted petitioner as to the payment of
(continued...)

[*18] abatement of interest from the due date of the income tax returns in question until the Commissioner contacts a taxpayer in writing with respect to the deficiency. See Allcorn v. Commissioner, 139 T.C. at 58 n.3; Guerrero v. Commissioner, T.C. Memo. 2006-201. Consequently, respondent's failure to abate interest for the period before April 20, 2007, was not, and under section 6404(e)(1) cannot be, an abuse of discretion. See Donovan v. Commissioner, T.C. Memo. 2000-220; H.R. Rept. No. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844 ("This provision does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of that time period.").

With respect to the period from April 20 to June 1, 2007, petitioner asserts that Revenue Agent Roberts caused unreasonable ministerial delays. However, the record reveals that Revenue Agent Roberts' actions were more than ministerial. She examined petitioner's case to determine the appropriateness of imposing the civil fraud penalties and, if appropriate, the amounts thereof. Revenue Agent Roberts held conference calls with petitioner's representative on

---

[11](...continued)
his income tax deficiencies for years 1996 through 2000, but that is a separate matter. This case concerns the abatement of interest with regard to the civil fraud penalty imposed by respondent, and at the time of the other contacts, respondent had not yet contacted petitioner regarding the penalty.

[*19] several occasions to discuss petitioner's case and ameliorate issues that had come to light (e.g., the possibility of adjusting a levy on petitioner's bank account). Each of these activities required Revenue Agent Roberts to exercise judgement and discretion. See sec. 301.6404-2(b)(2), Proced. & Admin. Regs.

Petitioner correctly points out that when Revenue Agent Roberts was transferred on September 7, 2007, she ceased working on petitioner's case, and Revenue Agent Denton did not commence working on petitioner's case until September 19, 2007. However, this 12-day period was included in the period respondent abated interest on the civil fraud penalties, i.e., the period June 1, 2007, to January 31, 2008.

With respect to the period from February 1 to 21, 2008, petitioner asserts that a ministerial delay occurred while Revenue Agent Denton drafted Letter 950 (DO). However, a review of Revenue Agent Denton's activity record demonstrates that she worked diligently in drafting that letter and was required to seek supervisory review. While there was a slight delay due to Revenue Agent Denton's illness and a Federal holiday, we do not believe the missed days unreasonably delayed the issuance of Letter 950 (DO). Moreover, the drafting of Letter 950 (DO) was not a ministerial act, inasmuch as issuance of the letter required supervisory approval. See sec. 301.6404-2(b)(2), Proced. & Admin.

[*20] Regs. In sum, we find respondent's failure to abate interest on the civil fraud penalties from February 1 to 21, 2008, did not constitute an abuse of discretion.

In conclusion, we find that respondent did not abuse his discretion by declining to abate interest on the amounts of the civil fraud penalties other than the period set forth in the notice of determination.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.