LUTHER HERBERT ALLCORN, III, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 4775–11.          Filed August 9, 2012.

P timely filed his 2008 Form 1040, U.S. Individual Income Tax Return, after previously filing a Form 1040–ES, Estimated Tax, and paying $4,000 in estimated taxes. On his Form 1040, P mistakenly added the $4,000 estimated tax payment to the income tax withheld reported on line 62 instead of the estimated tax payments reported on line 63. That mistake contributed to R's issuance of a refund to P on May 11, 2009. R later realized that P had reported the $4,000 estimated tax payment on line 62, and R subsequently informed P that he owed $4,000 plus a penalty and interest. P filed a request for abatement, and R granted P's request to abate the penalty but denied P's request to abate the interest. *Held*: Even though the refund was recoverable by assessment and levy procedures, the refund also would have been recoverable by filing a civil suit pursuant to I.R.C. sec. 7405 and was therefore an erroneous refund under I.R.C. sec. 6602. *Held*, *further*, because the refund constituted an erroneous refund under I.R.C. sec. 6602, it was also an erroneous refund pursuant to I.R.C. sec. 6404(e)(2). *Held*, *further*, even though interest abatement was not mandatory pursuant to I.R.C. sec. 6404(e)(2) because P's mistake contributed to causing the erroneous refund, R still had the authority to abate the interest with respect to the erroneous refund. *Held*, *further*, R did not abuse his discretion by denying P's request to abate the interest on the erroneous refund.

Luther Herbert Allcorn III, pro se.
*Beth A. Nunnink*, for respondent.

OPINION

WELLS, *Judge*: This case is before the Court on the parties' cross-motions for summary judgment pursuant to Rule 121. [1] We must decide whether respondent abused his discretion when he determined not to abate the interest with respect to an erroneous refund issued to petitioner.

*Background*

Some of the facts and certain exhibits have been stipulated. The remaining facts set forth below are based upon examination of the pleadings, moving papers, responses, and attachments. At the time he filed his petition, petitioner resided in Tennessee.

Petitioner timely filed his 2008 Form 1040, U.S. Individual Income Tax Return. Petitioner previously had submitted a Form 1040–ES, Estimated Tax, and he had paid $4,000 in estimated tax. Petitioner was unsure where to report his $4,000 estimated tax payment on his Form 1040, and he added it to the total in "Line 62, Federal income tax withheld from Forms W–2 and 1099." Petitioner did not report any amount on "Line 63, 2008 estimated tax payments and amount applied from 2007 return." He did not put the amount from his Form 1040–ES on line 63 because line 63 did not refer to the Form 1040–ES.

With his tax return, petitioner submitted a Form W–2, Wage and Tax Statement, reporting Federal income tax withheld of $24,106.75. Petitioner also submitted two Forms 1099–R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting Federal income tax withheld of $2,395.80 and $738.23. The sum of the Federal income tax withholdings reported on those forms was $27,241. However, because he also included the $4,000 estimated tax payment on line 62, the total he reported on that line was $31,241. Petitioner reported $31,241 in total payments on "Line 71, Add lines 62 through 70. These are your total payments." Petitioner included a note with his Form W–2 that stated: "Additional $4000 was sent with Form 1040–ES." On his Form 1040, petitioner reported that he was due a refund of $857.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

In a letter dated May 11, 2009, respondent informed petitioner that he was due a refund of $5,179.52. The letter contained a tax statement which reported that petitioner had total tax withheld of $31,241 and estimated tax payments of $4,000 for total payments of $35,241. The remainder of the refund due to petitioner was the result of an error he had made when he calculated his tax on qualified dividends. However, the May 11, 2009, letter did not mention that error and did not otherwise explain how respondent calculated the refund due to petitioner. On or about May 11, 2009, petitioner received a refund of $5,179.52. Of that amount, petitioner was not entitled to $4,000 (petitioner's excess refund[2]) because that amount reflected respondent's double counting of his estimated tax payments.

In a letter dated August 30, 2010, respondent informed petitioner that he owed $4,514.19. The letter explained: "We changed your 2008 account to correct your total federal income tax withheld." In addition to reducing the amount of Federal income tax withheld by $4,000, respondent also added a late payment penalty of $300 and interest of $214.19. Apparently confused by the August 30, 2010, letter, petitioner called respondent's office and received an explanation of how respondent had calculated petitioner's tax liability. After the telephone conversation with respondent's office, he agreed that he owed $4,000, but he disputed the penalty and interest. On or about September 1, 2010, petitioner submitted Form 843, Claim for Refund and Request for Abatement. Respondent received petitioner's Form 843 and payment of $4,000 on September 3, 2010.

In a letter dated January 28, 2011, respondent granted petitioner's request to abate the penalty but denied petitioner's request to abate the interest. The letter explained: "Since the tax information shown on your original return was incorrect or incomplete, this is considered a contributing factor in the issuance of the refund, and therefore does not qualify for the removal of the interest charge under the Tax Reform Act of 1986." Petitioner timely filed a petition with respect to respondent's determination not to abate interest.

---

[2] We refer to this amount as petitioner's excess refund to avoid confusion with the term "erroneous refund" used in sec. 6404(e)(2), as discussed below.

*Discussion*

Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Summary judgment may be granted only if no genuine issue exists as to any material fact and the issues presented by the motion may be decided as a matter of law. *See* Rule 121(b); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The parties have filed cross-motions for summary judgment, and we agree that there are no genuine issues of material fact and that the case may be decided as a matter of law.

The Commissioner has the authority to abate, in whole or in part, an assessment of interest on: (1) a deficiency if the accrual of such interest is attributable to an error or delay by an officer or employee of the Internal Revenue Service (IRS), acting in an official capacity, in performing a ministerial or managerial act; or (2) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer's or employee's being erroneous or dilatory in performing a ministerial or managerial act. Sec. 6404(e)(1). An error or delay by the Commissioner can be taken into account only: (1) if it occurs after the Commissioner has contacted the taxpayer in writing with respect to the deficiency or payment of tax; and (2) if no significant aspect of the error or delay is attributable to the taxpayer. *Id.*; *Krugman v. Commissioner*, 112 T.C. 230, 239 (1999). Additionally, the Commissioner must abate the assessment of interest on an erroneous refund of $50,000 or less unless the erroneous refund was caused by the taxpayer. Sec. 6404(e)(2).

The periods during which interest may be abated under section 6404(e)(1) and (2) are different, but those periods may overlap. Section 6404(e)(1) applies to abate interest attributable to an error or delay by the IRS in performing a ministerial or managerial act during the period after the IRS has contacted the taxpayer in writing with respect to the deficiency or payment. In contrast, interest abatement pursuant to section 6404(e)(2) applies to the period before a demand for payment has been made. However, both section 6404(e)(1) and (2) may apply to the abatement of interest for the period between when the taxpayer is first contacted in writing

regarding the deficiency or payment and the date a demand for payment is made. For example, as contemplated in the legislative history and by examples in the regulations, the period pursuant to section 6404(e)(1) may begin when the IRS commences an audit. *See* H.R. Rept. No. 99–426, at 844 (1985), 1986–3 C.B. (Vol. 2) 1, 844; sec. 301.6404–2(c), *Examples* (*1*), (*4*), (*5*), (*6*), Proced. & Admin. Regs. That period would begin before a demand for repayment has been made, and either section 6404(e)(1) or (2) could apply to abate the interest assessed during that time.

This Court may order an abatement of interest only if we conclude that the Commissioner abused his discretion in failing to do so. Sec. 6404(h). In order to demonstrate an abuse of discretion, a taxpayer must prove that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. Rule 142(a); *Lee v. Commissioner*, 113 T.C. 145, 149 (1999); *Woodral v. Commissioner*, 112 T.C. 19, 23 (1999). Congress did not intend for section 6404(e) to be used routinely to avoid the payment of interest; rather, Congress intended abatement of interest only where the failure to do so "would be widely perceived as grossly unfair." H.R. Rept. No. 99–426, *supra* at 844, 1986–3 C.B. (Vol. 2) at 844; S. Rept. No. 99–313, at 208 (1986), 1986–3 C.B. (Vol. 3) 1, 208.

Respondent contends that petitioner's excess refund was caused by petitioner's own mistake and that respondent is not at fault in any way. In contrast, petitioner contends that he is not at fault in any way and that the error is entirely respondent's. Insofar as petitioner erred by reporting his estimated tax payments on line 62 instead of line 63 of his Form 1040, he contends that the Form 1040 is unclear. Petitioner further contends that respondent should have been able to figure out that petitioner reported his estimated tax payments on line 62 because the sum of the Federal income tax withheld on his Forms 1099–R and W–2 was $4,000 less than that reported on line 62. Additionally, petitioner contends that respondent ignored the note he included with his Form W–2 that explained that the additional $4,000 had been paid with his Form 1040–ES. Respondent contends that petitioner's note was ambiguous. Although neither party is willing to admit to making an error, it is clear to us that both parties made errors. Accordingly, we examine the

statute to decide whether, on the basis of the facts and the errors committed by both parties, respondent abused his discretion in denying petitioner's request for abatement of interest.

As a preliminary matter, we must decide whether section 6404(e)(1) or (2) applies to the facts of the instant case. Respondent contends that section 6404(e)(1) applies. Section 6404(e)(1) provides:

SEC. 6404(e). ABATEMENT OF INTEREST ATTRIBUTABLE TO UNREASON-ABLE ERRORS AND DELAYS BY INTERNAL REVENUE SERVICE.—
    (1) IN GENERAL.—In the case of any assessment of interest on—
    (A) any deficiency attributable in whole or in part to any unreason-able error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or
    (B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attrib-utable to such officer or employee being erroneous or dilatory in per-forming a ministerial or managerial act,
the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

Respondent's motion does not state whether respondent considers subparagraph (A) or (B) applicable to the excess refund. Additionally, although it is unclear from respondent's motion, we assume that respondent considers that the period during which abatement of interest may have been available to petitioner began when the IRS contacted him with the May 11, 2009, letter. We further assume that respondent considers that letter to constitute the contact in writing with respect to a deficiency or payment that is required by section 6404(e)(1) before a taxpayer becomes eligible for abatement of interest. [3]

In contrast, petitioner appears to seek an abatement of interest pursuant to section 6404(e)(2), which concerns the

---

[3] We treat this as a concession by respondent and do not decide whether the May 11, 2009, letter constituted a contact in writing with respect to a deficiency or payment pursuant to sec. 6404(e)(1). If it did not constitute such a contact in writing, the interest abatement period pur-suant to sec. 6404(e)(1) could not have begun, if at all, until the next time respondent contacted petitioner in writing, i.e., when the demand for repayment was made. Because petitioner promptly paid, no amount of interest would be eligible for abatement pursuant to sec. 6404(e)(1).

abatement of interest with respect to an erroneous refund. Unlike the discretionary interest abatement provision of section 6404(e)(1), interest abatement pursuant to section 6404(e)(2) is mandatory unless one of two exceptions applies. Section 6404(e)(2) provides:

The Secretary shall abate the assessment of all interest on any erroneous refund under section 6602 until the date demand for repayment is made, unless—

   (A) the taxpayer (or a related party) has in any way caused such erroneous refund, or

   (B) such erroneous refund exceeds $50,000.

Respondent contends that section 6404(e)(2) does not apply because, according to respondent, the instant case does not involve a dispute over an erroneous refund under section 6602 but rather an assessment of overstated withholding.

   Section 6602 provides: "Any portion of an internal revenue tax (or any interest, assessable penalty, additional amount, or addition to tax) which has been erroneously refunded, and which is recoverable by suit pursuant to section 7405, shall bear interest at the underpayment rate established under section 6621 from the date of the payment of the refund." Section 7405 concerns actions for recovery of erroneous refunds, and section 7405(b) provides: "Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514 [4]) may be recovered by civil action brought in the name of the United States." Respondent contends that petitioner's excess refund is not an erroneous refund recoverable by suit under section 6602 but, instead, an assessment of overstated withholding made pursuant to section 6201(a)(3).

   One distinction between an erroneous refund and a deficiency or payment with respect to taxes described in section 6212(a) is the manner by which the Commissioner is able to recover the amount owed from the taxpayer. In the case of a deficiency or payment with respect to taxes described in section 6212(a), the Commissioner may seek to recover from the taxpayer by pursuing assessment and levy procedures. In contrast, in the case of an erroneous refund, the Commissioner may seek to recover from the taxpayer by filing a civil

---

[4] Sec. 6514 concerns refunds made after the expiration of the period of limitation for filing refund claims. The recovery of such refunds is governed by sec. 7405(a).

suit pursuant to section 7405. Oftentimes, an erroneous refund may also result in a tax liability, in which case the Commissioner has the option to recover the amount of the taxpayer's liability by civil suit or through the assessment and levy procedures.[5] *See United States v. Frontone*, 383 F.3d 656, 661 (7th Cir. 2004); *Brookhurst, Inc. v. United States*, 931 F.2d 554, 555–557 (9th Cir. 1991); *Beer v. Commissioner*, 733 F.2d 435 (6th Cir. 1984), *aff'g* T.C. Memo. 1982–735; *Warner v. Commissioner*, 526 F.2d 1 (9th Cir. 1975), *aff'g* T.C. Memo. 1974–243; *United States v. C & R Invs., Inc.*, 404 F.2d 314 (10th Cir. 1968).

For an amount paid to a taxpayer by the IRS to constitute an erroneous refund pursuant to section 6602, it is not necessary that the Commissioner have sought to recover it via a refund suit; it is sufficient that it be "*recoverable* by suit pursuant to section 7405". (Emphasis added.) Respondent does not contest that a refund was issued to petitioner or that a refund should not have been issued. In effect, respondent has conceded that an erroneous refund occurred. Had petitioner refused to pay over the amount owed, respondent would have had the authority to pursue recovery by filing a civil suit to recover petitioner's excess refund. However, respondent contends that, because petitioner's excess refund was also recoverable by assessment, section 6404(e)(2) does not apply.

Respondent's contention is at odds with a straightforward reading of the statute and with the legislative history. For some erroneous refunds, both section 6404(e)(1) and (2) may apply. The legislative history of section 6404(e) shows that Congress contemplated that both paragraphs (1) and (2) might apply: It refers to "overstated refunds", which could only occur in instances where an erroneous refund creates a tax liability. *See* H.R. Rept. No. 99–426, *supra* at 845, 1986–3 C.B. (Vol. 2) at 845; S. Rept. No. 99–313, *supra* at 209, 1986–3 C.B. (Vol. 3) at 209; H.R. Conf. Rept. No. 99–841

---

[5] Not all erroneous refunds will result in tax liabilities. If, for instance, a taxpayer who earned no income and therefore owed no taxes received an erroneous refund, the Commissioner's only option for recovery would be a civil suit. *See United States v. Frontone*, 383 F.3d 656, 660–661 (7th Cir. 2004). The Commissioner may use the assessment procedures to collect an erroneous refund only if the refund gives rise to a tax liability. *See id.* at 659–661; *cf. Interlake Corp. v. Commissioner*, 112 T.C. 103, 110 (1999) (holding that the Commissioner may not use deficiency procedures to collect an erroneous refund that does not give rise to a deficiency); *Lesinski v. Commissioner*, T.C. Memo. 1997–234 (same).

(Vol. II), at II–811, 1986–3 C.B. (Vol. 4) 1, 811. Indeed, the House report includes an example explaining that such an overstated refund might occur "by overstating a claim for a refund on a tax return." H.R. Rept. No. 99–426, *supra* at 845.

Respondent contends that petitioner's situation is analogous to that of the taxpayer in *Baral v. Commissioner*, T.C. Memo. 2009–113, where we concluded that section 6404(e)(2) did not apply. We disagree. In *Baral*, the taxpayer incorrectly computed the taxable portion of his Social Security benefits and therefore reported a higher income tax liability with respect to those benefits. The Commissioner noticed the taxpayer's mistake and corrected it, issuing the taxpayer a refund. However, the Commissioner later discovered that the taxpayer had failed to report his pension income and therefore was liable for tax on that unreported income, and the Commissioner subsequently issued a notice of deficiency. The unreported income in *Baral* "was wholly unrelated to the prior adjustment". We held that section 6404(e)(1), and not section 6404(e)(2), applied to govern the taxpayer's eligibility for abatement of interest on her deficiency in *Baral*.

In contrast, the instant case is distinguishable from *Baral* because petitioner's overstated withholding is directly related to the prior adjustment. Indeed, on line 71 of his Form 1040, petitioner reported the correct amount of total payments. Petitioner's mistake was adding his estimated tax to his withholding amount on line 62 instead of entering it on line 63. Had respondent considered the entirety of petitioner's return at the same time, no adjustments would have been necessary. Instead, respondent apparently considered the amount petitioner reported on line 63, i.e., zero, approximately 15 months before respondent considered the amount petitioner reported on line 62.

Petitioner contends that respondent should have noticed the mistake he made because he included with his Forms W–2 and 1099–R a note stating that the additional $4,000 was submitted with his Form 1040–ES. Respondent contends that he cannot be expected to read all of the notes sent by taxpayers. However, respondent's contention is at odds with the Internal Revenue Manual, which instructs: "Examine all attachments to the return" and "all taxpayer-initiated cor-

respondence must be responded to within 30 days."[6] Internal Revenue Manual pt. 3.11.3.3.7 (Jan. 1, 2008). Respondent further contends that petitioner's note is ambiguous, and we agree, but the note could have alerted respondent of the need to verify the payments in both lines 62 and 63.

On the basis of the foregoing, we conclude that both section 6404(e)(1) and (2) may apply to petitioner's excess refund. However, as explained above, the period for which a taxpayer may be entitled to an abatement of interest is different under section 6404(e)(1) and (2). Pursuant to section 6404(e)(1), the period begins only "after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment." *See Krugman v. Commissioner*, 112 T.C. at 239; *Harbaugh v. Commissioner*, T.C. Memo. 2003–316; *Donovan v. Commissioner*, T.C. Memo. 2000–220. Pursuant to section 6404(e)(2), the period begins with the issuance of an erroneous refund and continues until a demand for repayment is made. Because petitioner promptly paid upon receiving a demand for repayment and because, as explained above, respondent appears to have taken the position that he contacted petitioner in writing with respect to the deficiency or payment with the May 11, 2009, letter, the period during which interest abatement may be available is the same pursuant to both section 6404(e)(1) and (2).

As relevant here, section 6404(e)(2) requires that the Commissioner abate interest unless the taxpayer "*in any way* caused such erroneous refund". (Emphasis added.) From the wording of the statute, it appears that Congress intended that mandatory interest abatement apply only in a narrow range of circumstances where the erroneous refund was caused entirely by the Commissioner's own error. The statute suggests that, in a situation where the taxpayer contributed in even the smallest degree to the issuance of the erroneous refund, mandatory interest abatement does not apply. Nonetheless, courts that have considered the application of section 6404(e)(2) to situations in which the taxpayer may have contributed in some small way to the issuance of the erro-

---

[6] We are not suggesting that petitioner's note required a response; rather, we note that the Internal Revenue Manual instructs that any attachment to a return that could be considered correspondence should receive a prompt reply. That instruction, and the instruction to examine all attachments, are at odds with respondent's suggestion that it is acceptable for IRS employees to overlook or discard notes attached to returns.

neous refund appear to have taken a more flexible approach to the statute. In *Converse v. United States*, 839 F. Supp. 1274, 1278 (N.D. Ohio 1993), the District Court ordered the Government to abate interest on an erroneous refund pursuant to section 6404(e)(2) despite the court's finding that the taxpayers' actions helped cause the erroneous refund. The court stated:

Although the taxpayers arguably "caused such erroneous refund" by their improper filing of claims and by failing to draw the executed Form 870–AD to the attention of the IRS agent processing the claim, this Court also finds that the failure of the IRS to properly search its own records to ascertain the existence of any impediment to the claim (such as a Form 870–AD) helped to cause the erroneous refund. Therefore, the Court finds that the Government must abate any interest until * * * the date when demand for repayment was officially made. [*Id.*]

Similarly, in *Lindstedt v. United States*, 78 A.F.T.R.2d (RIA) 96–6211, 96–2 U.S. Tax Cas. (CCH) para. 50,488 (Fed. Cl. 1996), the Court of Federal Claims, citing *Converse*, held that it was immaterial whether the taxpayer may have added confusion by failing to file a quarterly return because the Government clearly made an error in its handling of the taxpayer's return. Accordingly, in *Lindstedt*, the Court of Federal Claims ordered the Government to abate any interest assessed before its demand for repayment. [7]

However, the courts in *Lindstedt* and *Converse* did not explain how their conclusions were consistent with a statute that limits mandatory abatement to situations in which taxpayers did not cause the erroneous refund "in any way". Upon further analysis, we consider those conclusions to be consistent with section 6404(e)(2) because, although the statute does not explicitly state so, we conclude, for the reasons explained below, that the Commissioner has the authority to abate interest with respect to erroneous refunds even when he is not required to.

As a preliminary matter, we conclude that the Commissioner is authorized to abate interest on erroneous refunds even when he is not required to do so because any other

---

[7] In contrast to *Converse v. United States*, 839 F. Supp. 1274, 1278 (N.D. Ohio 1993), and *Lindstedt v. United States*, 78 A.F.T.R.2d (RIA) 96–6211, 96–2 U.S. Tax Cas. (CCH) para. 50,488 (Fed. Cl. 1996), we concluded in *Pettyjohn v. Commissioner*, T.C. Memo. 2001–227, that the taxpayer was ineligible for a refund pursuant to sec. 6404(e)(2) because she caused the Commissioner to issue refunds when she repeatedly claimed overpayments of income tax.

result would be inconsistent with section 6404(e)(1). For instance, some erroneous refunds will also result in deficiencies, and, for those deficiencies, the Commissioner is authorized by section 6404(e)(1) to abate interest on a deficiency caused by an error or delay "if no significant aspect of such error or delay can be attributed to the taxpayer". That limitation authorizes abatement even if the taxpayer is somewhat at fault for the error or delay, as long as the taxpayer's fault is not a significant aspect of the error or delay. Consequently, the section 6404(e)(1) limitation is not as restrictive as the limitation under section 6404(e)(2), which reserves mandatory abatement for those situations where the taxpayer has not "in any way caused" the error. If a taxpayer committed some minor fault that contributed to the Commissioner's issuance of an erroneous refund but that was nonetheless overwhelmingly the Commissioner's error, and, if that refund resulted in a deficiency, the Commissioner clearly would be authorized to abate interest pursuant to section 6404(e)(1) for the period after the Commissioner contacted the taxpayer in writing. However, if section 6404(e)(2) is read to restrict abatements on erroneous refunds to only those situations where the taxpayer did not cause the erroneous refund "in any way", then the taxpayer would be ineligible for abatement pursuant to section 6404(e)(2). Because that result seems incongruous, we conclude that the "in any way caused" limitation under section 6404(e)(2) applies only to the mandatory nature of section 6404(e)(2) and does not restrict the Commissioner's authority to abate interest with respect to erroneous refunds.

Secondly, such a reading is more consistent with the congressional intent manifest in the legislative history of section 6404(e). The House report provides the following explanation for the amendment to section 6404:

### Present Law

Under present law, the IRS does not generally have the authority to abate interest charges where the additional interest has been caused by IRS errors and delays. This results from the IRS's long-established position that once tax liability is established, the amount of interest is merely a mathematical computation based on the rate of interest and due date of the return. Consequently, the interest portion of the amount owed to the Government cannot be reduced unless the underlying deficiency is reduced. The IRS does, however, have the authority to abate interest resulting from

a mathematical error of an IRS employee who assists taxpayers in preparing their income tax returns (sec. 6404(d)).

### Reasons for Change

In some cases, the IRS has admitted that its own errors or delays have caused taxpayers to incur additional interest charges. This may even occur after the underlying tax liability has been correctly adjusted by the IRS or admitted by the taxpayer. The committee believes that where an IRS official acting in his official capacity fails to perform a ministerial act, such as issuing either a statutory notice of deficiency or notice and demand for payment after all procedural and substantive preliminaries have been completed, authority should be available for the IRS to abate the interest independent of the underlying tax liability. The committee is especially concerned about IRS errors that cause taxpayers to receive much larger refunds than they are entitled to.

[H.R. Rept. No. 99–426, *supra* at 844, 1986–3 C.B. (Vol. 2) at 844.]

As the House report makes clear, Congress intended that section 6404(e) would give the IRS the authority to abate interest. Because Congress was especially concerned about IRS errors that caused taxpayers to receive much larger refunds than those to which they were entitled, Congress elected to make interest abatement with respect to such refunds mandatory unless the refunds were over a certain size or unless the taxpayer "in any way caused" the erroneous refund. However, Congress did not intend that the mandatory abatement provision limit the authority of the IRS to abate interest. Indeed, the basic purpose of adding section 6404(e) was to give the IRS discretion to abate interest in appropriate situations. Reading section 6404(e)(2) to limit the Commissioner's authority to abate interest would be inconsistent with that purpose.

On the basis of the foregoing, we conclude that section 6404(e)(2) does not limit the Commissioner's authority to abate interest. [8] Accordingly, although we conclude that peti-

---

[8] This conclusion is also consistent with the conclusion reached by the Commissioner in Internal Revenue Manual pt. 20.2.7.5 (Mar. 9, 2010), which states:

For refunds greater than $50,000, the abatement of interest under IRC 6404(e)(2) is **not required, but may be allowed** on a case by case basis. The IRS has the discretionary authority to abate interest on erroneous refunds that exceed $50,000. IRS employees should consider the following facts and circumstances when determining whether or not to abate interest due to an erroneous refund:

• Did the taxpayer cause or contribute to the error or delay?
• Did the taxpayer fail to return the erroneous refund for a significant period of time after discovery of the error or after the taxpayer reasonably should have discovered the error?
• Did the taxpayer return the erroneous refund before the IRS notified the taxpayer of the

Continued

tioner contributed to the cause of petitioner's excess refund when he reported his estimated tax payment on the wrong line, we conclude that respondent still had the authority to abate the interest on that erroneous refund. Consequently, we now consider whether respondent abused his discretion in declining to abate the interest on petitioner's excess refund pursuant to section 6404(e)(1) or (2).

When we review the Commissioner's actions under an abuse of discretion standard, we do not substitute our judgment for that of the Commissioner. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006). Rather, we consider whether the Commissioner has exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. *See Lee v. Commissioner*, 113 T.C. at 149; *Woodral v. Commissioner*, 112 T.C. at 23.

In respondent's January 28, 2011, letter denying petitioner's request to abate the interest on petitioner's excess refund, respondent explained that, because an error on petitioner's return contributed to the issuance of the refund, petitioner did not qualify for interest abatement. We cannot conclude that it was an abuse of discretion for respondent to decline to abate interest because of petitioner's mistake on his Form 1040. That determination is consistent with the limitations regarding taxpayer fault in both section 6404(e)(1) and (2). Additionally, we note that petitioner should have been aware that respondent had issued an erroneous refund when he received a much larger refund than he expected because the May 11, 2009, letter and tax statement explained that respondent had changed the amount of estimated tax reported on petitioner's return. That explanation should have alerted petitioner to respondent's error and prompted petitioner to contact respondent to inquire about the refund, as petitioner did when he received respondent's August 30, 2010, letter telling petitioner that he owed money.[9] On the basis of the foregoing, we conclude that respondent did not abuse his discretion when he denied petitioner's request for abatement of interest with respect to the erroneous refund.

---

error?

• Is the taxpayer sophisticated in tax or business matters?

[9] Indeed, the May 11, 2009, letter included a contact number and stated: "If you think we made a mistake, please call us at the number listed above."

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*