T.C. Memo. 2014-195

UNITED STATES TAX COURT

MARYANN LARKIN AND THOMAS LARKIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13515-11.                    Filed September 24, 2014.

Ps timely filed their 2006 Federal income tax return on which
they erroneously carried forward a 2005 net operating loss ("NOL")
without first carrying it back two years or making a proper election to
waive the carryback pursuant to I.R.C. sec. 172. Ps reported zero
income tax liability on that 2006 return. In 2008 Ps amended their
2006 return to remove the 2005 NOL carryforward and report a tax
liability of $76,400. In 2008 they also amended their 2003 tax return
to correctly use the 2005 NOL carryback and generate a 2003 tax
overpayment of $206,311. On the amended 2003 return, Ps requested
that the 2003 overpayment be credited to the 2006 liability of $76,400
that resulted from removal of the NOL carryforward. R processed the
amended return for 2003 but, rather than applying the 2003
overpayment for 2006 as Ps requested, R refunded the entire 2003
overpayment to Ps. R then assessed Ps' 2006 self-reported and
unpaid tax liability of $76,400, along with $8,014 in interest charged
for the period beginning on the due date of the 2006 return in
April 2007. Pursuant to I.R.C. sec. 6404, Ps sought an abatement of
interest, arguing that because Ps directed that the 2003 overpayment

[*2] be applied to the 2006 liability, there should be no tax due and unpaid and no interest charged.  R denied Ps' abatement request.  Ps petitioned this Court for a review of R's denial of abatement of interest.

Held:  R did not abuse his discretion in denying Ps' abatement of interest request and requiring Ps to pay interest on the entire unpaid 2006 liability.

Held, further, Ps are not entitled to relief under I.R.C. sec. 6404.

Maryann Larkin and Thomas Larkin, for themselves.

Kenneth Allan Hochman, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge:  This case is before the Court on the parties' cross-motions for summary judgment pursuant to Rule 121.[1]  We must decide whether the Commissioner abused his discretion when he determined not to abate the interest with respect to the Larkins' unpaid 2006 tax liability.  We agree with the parties that there is no genuine dispute as to any material fact on the issue of

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1986 (26 U.S.C.; "the Code") in effect for the tax year at issue.

**[*3]** whether the Internal Revenue Service ("IRS") abused its discretion in making its determination. For the reasons stated below, we will grant the Commissioner's motion and deny the Larkins' motion.

The Larkins make four contentions in favor of abatement of interest[2] in their case: (1) that there was no deficiency in or liability for their 2006 income tax, and thus no underpayment as a matter of law, and thus no liability for interest; (2) that the "use of money" principle should apply so that the existence of the 2003 overpayment would preclude the simultaneous accrual of interest on their 2006 tax year liability; (3) that the IRS erred (and caused interest to accrue) by issuing them a refund for their 2003 overpayment of tax rather than applying the overpayment to satisfy their 2006 liability as they requested; and (4) that they relied on the advice of an IRS officer when they filed the amended return for 2006 that gave rise to the accrual of interest. We discuss below all of these arguments (we hold that none can support a ruling in the Larkins' favor) and address the further

---

[2]At various times the Larkins assert that this case is <u>not</u> about interest abatement or the abuse of discretion by the Commissioner. At one point they state: "This case is not about interest abatement or ministerial error or delay by the 'Respondent's Appeal Officer' or any other IRS employee dealing with this case in the last five years." If this were true, it would deprive us of jurisdiction, since the essential jurisdictional predicate for this case is the IRS's denial of a request for abatement of interest. <u>See</u> sec. 6404(h)(1). However, we construe these statements as the Larkins' rhetorical flourishes.

**[\*4]** question whether any error giving rise to the interest liability can be attributed to the Larkins (we hold that it can).

## Background

Under Rule 121 (the Tax Court's analog to Rule 56 of the Federal Rules of Civil Procedure), the Court may grant summary judgment where there is no genuine dispute of any material fact and a decision may be rendered as a matter of law. We agree with the parties that there are no genuine disputes of material fact and that the case may be decided as a matter of law. Since we will grant the IRS's motion for summary judgment, we draw all inferences in favor of the Larkins and assume that the facts are as follows.

At the time they filed their petition, the Larkins resided in Palm Beach Gardens, Florida.

### 2003 return

In April 2004 Mr. and Mrs. Larkin filed a joint Federal income tax return for taxable year 2003, reporting taxable income of $817,054 and tax due of $261,175. They paid that liability. (The year 2003 is not at issue here, but facts for that year are relevant to the year at issue.)

[*5] 2005 net operating loss

In 2005 the Larkins wholly owned three S corporations:  High Tech Staffing Services, Inc.; Private Care, Inc.; and High Tech Home Health, Inc.  For High Tech Home Health, Inc., the Larkins reported on their Schedule E, "Supplemental Income and Loss", that they incurred a net operating loss ("NOL") in 2005.  The Larkins do not offer any evidence to substantiate the 2005 NOL they reported; but for purposes of his motion for summary judgment, the Commissioner does not dispute it.[3]

Having incurred the 2005 NOL, the Larkins faced the question of whether and how to deduct it for another tax year.  Apparently the Larkins anticipated receiving substantial income in the years following the sale of their businesses in April 2006 (i.e., near the time that their 2005 tax return was due).  Therefore they thought it would be to their advantage not to deduct the NOL and generate an overpayment in an earlier year (such as 2003) but instead to deduct the NOL for a later year to reduce their liability for that later year.  They therefore did not carry back the 2005 NOL to a prior year.  (However, the Larkins did not make an

---

[3]The Larkins' tax returns and other documents filed with this Court offer varying numbers for the 2005 NOL.  Since we will grant respondent's motion on legal grounds for which the differences are immaterial, we need not determine the precise amount of the NOL.

**[*6]** election for 2005 to waive the carryback period in favor of a carryforward, as required by section 172(b)(1) and (3).)

2006 return

Instead, the Larkins waited a year, and on their timely filed 2006 Form 1040, "U.S. Individual Income Tax Return", the Larkins reported a deduction of $604,055 (which they stated was the 2005 NOL carryforward) and offset their otherwise taxable income for tax year 2006, leaving them with a reported 2006 tax liability of zero.[4] Also on their 2006 return, the Larkins reported an overpayment of $10,000 from their 2005 estimated tax payment and requested that the IRS refund the $10,000 overpayment.

Amended returns

In 2008, when they did not receive the income with which they had expected to take advantage of their 2005 NOL, the Larkins filed amended returns in order to obtain the benefit of the NOL for an earlier year. They first attempted to carry their 2005 NOL back to tax year 2004 by filing for that year a Form

---

[4]The Larkins object to the IRS's statement that their original 2006 return reported no tax liability, but if this is an attempt to raise a dispute, it is evidently not a "genuine dispute" for purposes of Rule 121: The Larkins' point seems to be that they reported income in that year (which would have generated a liability) and that they used the 2003 NOL to, in effect, cover that liability. If this is their point, then, as we explain below, it distorts the actual working of the Internal Revenue Code. Claiming an NOL does not satisfy a liability but causes it not to exist.

**[*7]** 1040X, "Amended U.S. Individual Income Tax Return", on April 15, 2008. However, the IRS returned their 2004 Form 1040X to them unprocessed.

As the Larkins explain, they then contacted the IRS,[5] and a revenue officer, Linda McNamee, informed them that they could not simply choose a carryback period of one year, but that they would need to carry the loss back two years in accordance with the statute. The Larkins then filed two amended returns for 2003--the first on May 23, 2008, and the second on June 10, 2008. Only the latter was processed by the IRS. The Larkins claim that "[t]he May 20, 2008 tax filings were made under the direction of Ms. Linda McNamee of the Philadelphia office of the Internal Revenue Service to properly pay the 2006 and 2007 taxes while recovering the remaining money." On the processed 2003 Form 1040X, the Larkins deducted $588,071 of the 2005 NOL, reducing their reported adjusted gross income for tax year 2003 from $817,054 to $238,485, and resulting in a claimed tax overpayment of $206,311 for 2003. Line 24 of the Form 1040X reads, "Amount of line 22 [i.e., the overpayment] you want applied to your [blank] estimated tax"; and it appears that on this line the Larkins requested that their

_____

[5]The record is unclear as to the form of this communication. We are unable to tell whether this alleged contact was in person, over the telephone, via letters, or by e-mail.

[*8] claimed overpayment of $206,311 be applied to their 2006 tax liability.[6]  The Larkins assumed this request would ensure that the funds from the 2003 overpayment would be allocated as they directed and no interest would then be due for 2006.

When they submitted their first amended 2003 return in May 2008, they also submitted an amended return on Form 1040X for 2006.  Their original 2006 return had claimed the 2003 NOL carryforward as a deduction and had reported a zero liability; but on this amended 2006 return they removed the 2003 NOL carryforward deduction and consequently self-reported a tax liability for 2006 in the amount of $76,400.  Of course, they had not previously paid this liability.  But on the amended 2006 return they reported, as a credit, the 2003 overpayment that they had recently claimed (and had requested to be applied to 2006).  This claimed 2003 credit was greater than the liability they now reported, so they claimed an overpayment of $139,911 on their 2006 Form 1040X.  The Larkins then directed

---

[6]The IRS has been unable to find the Larkins' 2003 Form 1040X filed on June 10, 2008, but it was evidently similar to the 2003 Form 1040X filed on May 23, 2008 (which was filed and not processed by the IRS), which had likewise claimed an overpayment of $206,311 and requested that it be applied to their 2006 tax liability.  The absence of the June 2008 amended return from our record is not material, because the parties do not dispute either the amount of the claimed overpayment or that the Larkins requested it to be applied to 2006.

**[\*9]** that this 2006 overpayment be applied toward their 2007 tax liability (which

is not at issue here).[7]

IRS administrative actions

The IRS did allow the Larkins the 2003 overpayment they claimed but did

not credit it to the Larkins' 2006 tax liability as the Larkins had requested.

Instead, on July 9, 2008, the IRS issued a refund of $206,311 to the Larkins for the

2003 overpayment.[8]  On September 22, 2008, the IRS assessed tax of $76,400 for

---

[7]The Larkins claimed a refund of allegedly overpaid interest for 2007 and litigated the claim in Larkin v. United States, No. 11-80732 (S.D. Fla. June 20, 2012).  The District Court granted the IRS's motion for summary judgment.  The Commissioner has not here pleaded collateral estoppel from that order as to any issues in this case.

[8]This 2003 overpayment was properly refunded without interest in the Larkins' favor.  Under section 6611(f)(1), for interest purposes the overpayment of 2003 tax was "deemed not to have been made prior to the filing date for" the loss year (2005), i.e., not before April 2006; and under subsection (f)(4)(B)(i)(I), the 2003 overpayment was "treated as an overpayment for the loss year", i.e., for 2005.  However, under subsection (f)(4)(B)(i)(II), the return for the loss year (2005) was treated as if "not filed before claim for such overpayment is filed", i.e., in May 2008.  That is, the 2003 overpayment was deemed to arise in April 2006, when the 2005 return was due; but the 2005 return (due in April 2006) was treated as not filed before May 2008 (and therefore as late), and the refund was made less than 45 days thereafter on July 9, 2008.  Under section 6611(e)(1), where a return is treated as filed late and the overpayment "is refunded within 45 days after the date the return is filed, no interest shall be allowed under subsection (a) on such overpayment."  Consequently, the Larkins owed interest on the unpaid 2006 liability but did not receive interest on the simultaneous 2003 overpayment, an evident asymmetry in the Code's interest provisions.  We discuss this issue further

(continued...)

[*10] 2006, as reported on the Larkins' amended 2006 return.  The IRS also assessed interest of $8,014 for 2006 running from April 2007 (when the 2006 tax return was due).

Administrative request for interest abatement and Tax Court petition

On October 29, 2008, the Larkins mailed a letter to the Taxpayer Advocate Service ("TAS") requesting interest abatement for the entire amount of interest assessed on their 2006 tax liability.  On November 12, 2008, the Larkins made a payment of $76,400 and satisfied their 2006 tax liability (exclusive of interest and penalties).  In March through November 2009, various payments and credits were applied to the Larkins' 2006 taxable year, bringing the balance due to zero.

On July 10, 2009, TAS sent the Larkins a Letter 3022C disallowing their request for the abatement of interest for tax year 2006.  The Letter 3022C explained that the interest charged to the Larkins was not due to an IRS error or delay in the performance of a ministerial act.  On February 16, 2010, TAS informed the Larkins it was closing their inquiry with TAS and outlined the steps the Larkins could take, should they seek to appeal.

---

[8](...continued)
in connection with the "use of money" issue in part II.A.2 below.

**[*11]**  On March 24, 2010, the Larkins sent the IRS's Interest Abatement Coordinator a letter appealing the TAS decision to uphold the interest charge. An IRS Appeals officer, Tina Schieder, contacted the Larkins in July 2010 regarding their request. Ms. Schieder reviewed the Larkins' case[9] and sent them a letter dated February 9, 2011, recommending that the IRS not abate the interest because "no IRS error or delay caused the additional interest". The Larkins, Ms. Schieder, and her manager, Daria Gallen (Appeals Technical Guidance Coordinator), had a telephone conference in March 2011. In April 2011 Ms. Gallen sent the Larkins an Appeals Supplemental Case Memorandum, wherein she addressed the Larkins' arguments and explained that the interest charged could not be abated.

Following that memorandum, Ms. Schieder issued a "Full Disallowance--Final Determination Letter" to the Larkins on April 29, 2011, denying their request for interest abatement for taxable year 2006. The letter explained that if the Larkins disagreed with the IRS's determination (and if they met the jurisdictional net worth requirements) they could petition the Tax Court and request a review of the IRS's denial of their request to abate interest under section 6404.

[9]After receiving her first letter sent on October 19, 2010, the Larkins requested that Ms. Schieder review their case again. She did so, and sent the February 9, 2011, letter.

**[*12]** On June 7, 2011, the Larkins timely petitioned this Court for review of the IRS's denial of their request to abate interest under section 6404.

Discussion

I.      General legal principles

      A.      Summary judgment standards

Where the material facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary trial. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine dispute as to any material fact, and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). Both parties have moved for summary judgment; and since we will grant the IRS's motion for summary judgment, we draw all inferences in favor of the Larkins.

**[*13]** B.    Net operating loss deductions

The deduction the Larkins attempted to use, and which gave rise to the interest at issue, is an NOL deduction.  Although the NOL is not itself at issue here, its operation is relevant to the dispute.  A taxpayer's NOL is equal to the excess of deductions over gross income, computed with certain modifications.  See sec. 172(c), (d)(1)-(4).  In general, an NOL is first carried back to each of the two preceding years to offset taxable income (beginning with the earlier year first).  Then, to the extent that it has not been absorbed, the NOL is carried forward to each of the next 20 years.  Sec. 172(b)(1) and (2).  Once the NOL is "used up" and absorbed by offsetting income for a tax year, it can no longer be carried forward.  Sec. 172(b)(2).

A taxpayer may irrevocably elect to relinquish his two-year carryback period, and then he may use the NOL only by carrying it forward to offset income in subsequent years.  Sec. 172(b)(3).  However, "[s]uch election * * * shall be made by the due date * * * for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect."  Id.  In this case, "the year of the net operating loss" is 2005, and the due date for filing that return was in April 2006.

**[*14]** C.     <u>Interest on underpayments and overpayments</u>

Chapter 67 of the Code sets out the law on interest--both "Interest on Underpayments" in subchapter A (sections 6601-6603) and "Interest on Overpayments" in subchapter B (section 6611).  Underpayment and overpayment interest are not perfectly symmetrical.  An example not relevant here is that the interest rate that the Government owes on large corporate overpayments is less than the interest rate that a corporate taxpayer owes on underpayments.  <u>See</u> sec. 6621(a)(1)(B).[10]  An example that does have a bearing on this case is the date

---

[10]The Code partially addresses the asymmetry between overpayment interest and underpayment interest with the interest netting provision of section 6621(d), which provides:

> To the extent that, for any period, interest is payable [by the taxpayer to the Government] under subchapter A and allowable [to the taxpayer by the Government] under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

However, that provision has no application to this case, since it applies only where "interest <u>is allowable</u> [to the taxpayer] under subchapter B" (emphasis added), whereas interest was <u>not</u> allowable on the Larkins' 2003 overpayment, since it was "refunded within 45 days after the date the return is [treated as] filed". Sec. 6611(e)(1); <u>cf.</u> sec. 6611(f)(4)(B)(i)(II).  The Larkins do not seek in this case an award of interest for 2003, and we could not grant it.  The sliver of interest refund jurisdiction that Congress has granted to the Tax Court--i.e., to order a refund of interest on an overpayment that we have determined, <u>see</u> sec. 6512(b)(2)--has no application here.  Taxpayer suits for refund of

(continued...)

**[*15]** that interest begins to run, see supra note 8:  On the one hand, a taxpayer will owe underpayment interest beginning on "the last date prescribed for payment", sec. 6601(a), which for individual income tax is the due date of the return--typically April 15 of the following year, see secs. 6072(a), 6151(a)-- without regard to when or whether he actually files his return.  On the other hand, the Government will owe no interest on an overpayment before the return is filed, sec. 6611(b)(3); and where (as here) the relevant return is deemed untimely filed, see supra note 8, the Government will owe no interest at all if the overpayment "is refunded within 45 days after the date the return is filed", sec. 6611(e)(1).

D.    Section 6404 abatement of interest

The Commissioner has the authority "to abate the unpaid portion of the assessment of any tax or any liability in respect thereof, which * * * is excessive in amount, or * * * is erroneously or illegally assessed."  Sec. 6404(a).  Section 6404(e) provides:

(1) In general.--In the case of any assessment of interest on--

(A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or

---

[10](...continued)
underpayment interest paid or for allowance of additional interest on overpayments must be brought in a District Court or the Court of Federal Claims. See 28 U.S.C. secs. 1346(a), 1491(a)(1) (2006).

[*16] employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or

> (B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial or managerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

The regulations define a "managerial act" as--

an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel. A decision concerning the proper application of federal tax law (or other federal or state law) is not a managerial act. Further, a general administrative decision, such as the IRS's decision on how to organize the processing of tax returns or its delay in implementing an improved computer system, is not a managerial act for which interest can be abated under paragraph (a) of this section. [26 C.F.R. sec. 301.6404-2(b)(1), Proced. & Admin. Regs.]

A "ministerial act", also defined by regulation, is--

a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. A decision concerning

**[*17]** the proper application of federal tax law (or other federal or state law) is not a ministerial act.  [Id. para. (b)(2).]

Thus, this Court can review an error or delay by the Commissioner under section 6404(e) only:  (1) if it occurs after the Commissioner has contacted the taxpayer in writing with respect to the deficiency or payment of tax, and (2) if no significant aspect of the error or delay is attributable to the taxpayer. Sec. 6404(e)(1); Allcorn v. Commissioner, 139 T.C. 53, 56 (2012).  If the Commissioner declines a taxpayer's request to abate interest, a taxpayer who meets the net worth qualifications set forth in section 7430(c)(4)(A)(ii)[11] may petition the Tax Court for review.  Sec. 6404(h)(1); see Hinck v. United States, 550 U.S. 501, 506 (2007) (holding that the Tax Court provides the exclusive forum for judicial review of the IRS's denial of a request for interest abatement).

The Tax Court reviews for abuse of discretion the IRS's decision not to abate interest.  A taxpayer must therefore show that the IRS exercised its discretion arbitrarily, capriciously, or without sound basis in fact or law. Sec. 6404(h); Allcorn v. Commissioner, 139 T.C. at 57.  "Congress did not intend for section 6404(e) to be used routinely to avoid the payment of interest; rather,

---

[11]To be eligible under section 7430(c)(4)(A)(ii) (incorporating 28 U.S.C. sec. 2412(d)(2)(B)), a party must have a net worth of less than $2 million.  The parties have stipulated "that Petitioners satisfy the requirements referred to in I.R.C. § 7430(c)(4)(A)(ii) for purposes of § 6404(h)(1)."

**[*18]** Congress intended abatement of interest only where the failure to do so 'would be widely perceived as grossly unfair.'" Id. (quoting H.R. Rept. No. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844, and S. Rept. No. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208). In reviewing for abuse of discretion, this Court will not substitute its judgment for that of the IRS. Id. at 66. Ultimately, the taxpayer bears the burden of proving abuse of discretion, Rule 142(a); but for present purposes, to defeat the Commissioner's motion for summary judgment under Rule 121, the Larkins need only raise a genuine dispute of fact.

II.     Petitioners' arguments

        A.      Non-liability for interest

The Larkins make two arguments to the effect that their 2003 interest should be abated because, under the law as rightly construed, they do not owe that interest--first, because (they assert) they had no tax deficiency or liability for 2003, and, second, because the Government had the use of their money (i.e., their 2003 tax overpayment) in an amount greater than their 2006 tax liability while that 2006 liability was unpaid.

**[*19]**          1.          <u>The existence of their tax liability</u>

The Larkins maintain that as a matter of law they had no tax deficiency or liability for 2006, and thus no tax underpayment, and thus no possible liability for interest.[12]  It is true that there was no "deficiency" in their 2006 tax (as that term is defined in section 6211(a)); but this is because the Larkins <u>self</u>-reported their 2006 tax liability of $76,400 on their Form 1040X, <u>cf.</u> 26 C.F.R. sec. 301.6211-1(a), Proced. & Admin. Regs., and the Commissioner assessed the liability pursuant to section 6201(a)(1).  It was the Larkins' removal of their (improper) 2005 NOL carryforward deduction from the calculation of their 2006 tax on Form 1040X that gave rise to the liability they now question.  When a deduction is removed, the tax liability correspondingly increases.  Even if the IRS had exercised its discretion to apply the Larkins' 2003 overpayment to their 2006 account, the application of the overpayment would not have negated the Larkins' tax liability; it would have satisfied that liability.  They thus had a liability as a matter of law; and if that

---

[12]As we understand the Larkins' argument, they do not actually contend that they are not liable for the interest simply because they are not liable for the tax--a contention that would be outside our jurisdiction.  <u>See</u> <u>Kosbar v. Commissioner</u>, T.C. Memo. 2003-190.  Rather, they apparently admit their self-reported 2006 liability that the IRS assessed, but they argue, in effect, that because of the 2003 overpayment, the overall balance they owed the IRS should be deemed to be zero.

**[\*20]** liability was <u>not</u> timely satisfied, then interest properly accrued on the underpayment of that liability.

  2. <u>"Use of money"</u>

During the period for which interest accrued against the Larkins' unpaid 2006 liability pursuant to section 6601(a) (i.e., the period from April 2007 until July 9, 2008[13]), the Government held not-yet-refunded overpayments for 2003 on which interest in the Larkins' favor was <u>not</u> accruing, pursuant to section 6611(e)(2). The Larkins therefore insist that the "use of money" principle should apply here, with the result that they do not owe interest on the 2006 underpayment. For this argument, they rely on a dissenting opinion in <u>FleetBoston Fin. Corp. v. United States</u>, 483 F.3d 1345, 1358 (Fed. Cir. 2007) (Newman, J., dissenting), which states that in accordance with the "use of money" principle "interest should not be assessed when the IRS already possesses the payment."

However, the majority opinion in <u>FleetBoston</u> correctly held that Congress set forth very specific provisions for determining when tax is paid or not paid and

_____

[13]Interest actually accrued on the Larkins' liability until November 12, 2008, when they paid $76,400 and satisfied their tax liability. However, after reviewing the Larkins' account, the IRS abated the interest assessed between July 9 and November 12, 2008.

**[\*21]** to determine when interest should be charged or not charged. These provisions confirm that "a tax for a particular year is not paid by money generally held by the IRS, but rather by money assigned as payment of the tax for that year". Id. at 1350.

The Code does not include any broad provision that interest does not accrue on a given liability if the Government has the use of the taxpayer's money overpaid against another liability. Rather, as we noted, the interest netting allowed by the Code is limited, and the interest provisions have an asymmetry that is not perfectly cured. Thus, as a matter of law, interest did accrue on the Larkins' 2006 underpayment, notwithstanding the pendency of the 2003 overpayment.

B.    Failure to credit as requested

The Larkins claim that the IRS erred when it failed to honor their request to apply a 2003 overpayment against their 2006 income tax liability, per their handwritten instructions on line 24 of their 2003 Form 1040X. Congress has vested the Commissioner with discretion to refund a taxpayer's overpayment of tax or credit it to another liability, see sec. 6402(a); Weber v. Commissioner, 138

[*22] T.C. 348, 356 (2012), but we assume for present purposes that we can review such an action for abuse of discretion.[14]

However, in this case the issue is a moot point, since the IRS's decision to refund the 2003 overpayment rather than credit it against the 2006 liability had no effect on the accrual of interest on the 2006 liability. It appears that both parties may have assumed that a credit from a 2003 overpayment (originally paid by the Larkins by April 2004) would, no matter when it was administratively credited against the 2006 liability, have been treated as if it had been paid at least as early as the due date of the 2006 return (i.e., April 2007) and would therefore have precluded the accrual of any interest for 2006. But that is not the case. The provisions on underpayment interest include section 6601(f), which provides:

> SEC. 6601(f). Satisfaction by Credits.--If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment. * * * [Emphasis added.]

---

[14]See N. States Power Co. v. United States, 73 F.3d 764, 768 (8th Cir. 1996) ("In a proper case, the failure to credit overpayments might be reviewable on an abuse-of-discretion basis"); Winn-Dixie Stores, Inc. v. Commissioner, 110 T.C. 291, 294-296 (1998); see also Orian v. Commissioner, T.C. Memo. 2010-234, slip op. at 13-17 (and cases cited thereat).

[*23] As we have noted, the Government will owe no interest if the relevant return was deemed untimely filed, see supra note 8, and the overpayment was "refunded within 45 days after the date the return is filed", sec. 6611(e)(1).  Thus, a credit from one year to another will sometimes affect the running of interest for the other year, but only where interest "would have been allowable".

Consequently, the IRS's failure to credit the 2003 overpayment in the manner that the Larkins requested did not affect their liability for interest for 2006; and if the IRS had made the credit as requested, the Larkins would still have owed interest for 2006 (until the actual date of the crediting).

C.    Reliance on the advice of the IRS

The Larkins claim they acted in reliance on advice from the IRS in filing their first amended 2003 return on May 23, 2008.  However, they fail to show either that the advice was a ministerial or managerial act or that it caused an error or delay leading to the interest charged in this case.  The Larkins state:

> Originally, the LARKINS improperly carried the loss back to 2004 in April 15, 2008 filings.  Those filings were rejected by the COMMISSIONER and returned to the LARKINS.  The May 20, 2008 tax filings were made under the direction of Ms. Linda McNamee of the Philadelphia office of the Internal Revenue Service to properly pay the 2006 and 2007 taxes while recovering the remaining money.

[*24]  The Larkins' first attempt to use their 2005 NOL was unsuccessful; as they note, they filed an amended Form 1040X for tax year 2004, and it was not processed by the IRS.  In May 2008 the Larkins filed a number of amended returns, including returns for 2003, 2006, and 2007.  Though the Larkins insist these were filed at the direction of an IRS officer, Ms. McNamee, they do not clarify which amended returns for which tax years her advice pertained to, nor do they provide the details or content of the alleged communication.

The Larkins also do not identify how Ms. McNamee's advice was in error or caused delay, within the meaning of section 6404(e).  Their original 2006 return had claimed the 2005 NOL in violation of section 172(b)(1)(A); so if she advised that the Larkins remove the NOL on an amended return, as they did, then the advice was evidently correct.  If she advised that the Larkins deduct the NOL on amended returns for the two years preceding 2005 (in compliance with section 172(b)(1)(A)), as they did, then the advice was evidently correct.  We do not see any erroneous advice in the Larkins' account.

Respondent argues that section 6404(e)(1) provides for relief in the case of errors by the Commissioner in performing a "ministerial" or "managerial" act; he insists that Ms. McNamee's alleged advice, even if erroneous, falls under neither definition established by regulation.  We agree with respondent.  Providing an

[*25] interpretation of Federal tax law (such as on the question whether section 172 requires a taxpayer to carry back an NOL deduction one year or two) is neither a ministerial nor a managerial act. 26 C.F.R. sec. 301.6404-2(b)(1) and (2), Proced. & Admin. Regs.[15] We find that Ms. McNamee's alleged advice was neither a managerial act nor a ministerial act. Accordingly, we hold there was no ministerial or managerial error or delay that caused the interest to be charged, and the IRS did not abuse its discretion when it declined to abate the interest.

III.    Error attributable to the Larkins

Even if the Larkins might otherwise be entitled to an abatement of interest under section 6404(e), the interest charged in this case is best explained as the

---

[15]An illustrative example in 26 C.F.R. sec. 301.6404-2(c), Proced. & Admin. Regs., underscores this point:

> Example 12. A taxpayer contacts an IRS employee and requests information with respect to the amount due to satisfy the taxpayer's income tax liability for a particular taxable year. To determine the current amount due, the employee must interpret complex provisions of federal tax law involving net operating loss carrybacks and foreign tax credits. Because the employee incorrectly interprets these provisions, the employee gives the taxpayer an incorrect amount due. As a result, the taxpayer pays less than the amount required to satisfy the tax liability. Interpreting complex provisions of federal tax law is neither a ministerial nor a managerial act. Consequently, interest attributable to an error or delay arising from giving the taxpayer an incorrect amount due to satisfy the taxpayer's income tax liability in this situation cannot be abated under paragraph (a) of this section. [Emphasis added.]

[*26] result of their own actions. In April 2006, when they prepared their 2005 return showing the NOL, it was their decision not to promptly claim a 2003 refund based on the NOL carryback (which would have given them the funds at the earliest possible moment, in ample time to pay their 2006 tax liability in April 2007). It was by their own oversight or mistake that they failed to file in April 2006 an election to waive the carryback of the 2005 NOL, if they wished to do so. It was by their own mistake that in April 2007 they filed their original 2006 return improperly claiming a carryforward of the 2005 NOL. It was this series of mistakes that brought them to the point, in 2008, of needing to file an amended 2006 return that reported an unpaid, overdue liability of $76,400 on which interest had accrued starting in April 2007. At this point, it was simply too late (in view of sections 6601(f) and 6611(e)(2)) to avoid that interest liability by belatedly claiming a credit of a 2003 overpayment.

Section 6404(e)(1) makes it clear that we can order the abatement of interest due to a managerial or ministerial error by the IRS only if no significant aspect of the error or delay is attributable to the taxpayer. Allcorn v. Commissioner, 139 T.C. at 56. Since the Larkins do not point to any such errors by the IRS, and they also fail to rebut the clear indication that the interest accrual was attributable to their own acts and decisions, we find that the IRS did not abuse its discretion in

**[*27]** declining to abate the interest properly charged to the Larkins on their unpaid tax liability.

## Conclusion

The IRS did not abuse its discretion in denying the Larkins' request to abate interest, and the Larkins are therefore not entitled to relief under section 6404. Consequently,

<u>An appropriate order and decision</u>

<u>will be entered</u>.